IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT BLANEY, | * | |
| Plaintiff, | * | |
| v. | * | |
| | | CIVIL NO. JKB-19-2264 |
| BEATRIZ GONZALEZ, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

This case arises out of Plaintiff Robert Blaney's experience as an applicant for employment with the National Security Agency ("NSA"). In March of 2013, Plaintiff received a conditional offer of employment with the NSA, subject to a final approval process which he was told would take roughly a year. As the approval process extended into its fourth year in August of 2017, Plaintiff tried to exert some control over his situation by demanding information from his contacts in the NSA Office of External Recruiting. When these contacts provided information that Plaintiff believed to be inaccurate, he reported them to NSA Customer Care. When their supervisor reprimanded Plaintiff for doing so, he reported her to the NSA Office of the Inspector General. Subsequently, Plaintiff was informed that his conditional offer had been withdrawn.

Plaintiff brought this lawsuit to seek compensation from the four NSA employees who he believes sabotaged his application as payback for his reports of their alleged malfeasance. Proceeding *pro se*, Plaintiff filed a ten-count Complaint, in which he charges Defendants with seven common law torts, RICO violations, violations of his constitutional rights, and Privacy Act violations. Now pending before the Court is Defendants' motion to dismiss or for summary judgment and Plaintiff's cross-motion for summary judgment. The cross-motions are fully briefed

and no hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, the Court will grant Defendants' motion in its entirety and deny Plaintiff's cross-motion.

## *I.   Background[1]*

Robert Blaney is a Maryland resident and former National Security Agency applicant. (Compl. ¶ 5.) According to the allegations in the Complaint, the Defendants—Beatriz Friedl (formerly Beatriz Gonzalez), Jennifer Fernandes, Jessica Gnagey, and Brenda Martineau—are NSA employees in the Office of External Recruiting ("OER"). (*Id.* ¶¶ 6–9.)

While completing his J.D. degree in 2013, Plaintiff applied for a language analyst position with the NSA. (*Id.* ¶ 10.) He received and accepted a conditional offer of employment on March 29, 2013. (*Id.* ¶ 12.) Plaintiff subsequently completed certain forms and provided information necessary to receive his security adjudication and final approval for the role. The information provided included the identities of certain individuals whom Plaintiff considered to be close or continuing foreign contacts ("CCFs"). (*Id.* ¶¶ 11–16.) On June 13, 2013, Defendant Fernandes informed Plaintiff that "based on her understanding of Plaintiff's circumstances, Plaintiff's Adjudication would be completed in approximately one year." (*Id.* ¶ 19.)

Plaintiff's adjudication was not completed in a year, and in the fall of 2014, Plaintiff broke contact with all of his CCFs in hopes of expediting the process. (*Id.* ¶ 25.) A year and a half later, in May of 2016, Plaintiff completed his final security interview and polygraph examination. (*Id.* ¶ 29.) Another ten months then passed without further developments. (*Id.* ¶ 33.)

On March 20, 2017, Plaintiff emailed OER to request an update and ask whether he could access his own Security File.[2] (Compl. ¶ 33.) Defendant Gnagey emailed Plaintiff back, reporting

---

[1] The facts in this section are taken from the Complaint and construed in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

[2] Plaintiff alleges that a "Security File" is a confidential file the NSA compiles on applicants, which includes "the results of [the applicant's] Background Investigation, a polygraph examination, and a psychological examination."

2

"that no individual at OER could access his Security File, because doing so was legally prohibited by the Privacy Act." (*Id.* ¶ 34.) Another three months passed, and on August 14, Plaintiff again reached out regarding his Security File. "Through several emails on August 14–22, 2017, Plaintiff asked Ms. Gnagey and Ms. Fernandes how to access his Security File, and if he could complete a waiver or otherwise authorize OER to access his Security File." (*Id.* ¶ 35.) Fernandes and Gnagey responded that OER was "legally prohibited from accessing his Security File under any circumstances," but that Plaintiff could make a Freedom of Information Act ("FOIA") request to see his Security File. (*Id.*) Plaintiff responded that this advice "was contrary to NSA policy," which he believed dictated that his request should be made pursuant to the Privacy Act, not FOIA, "and that he was concerned that their insistence on Plaintiff using incorrect methods to access his Security File could be considered an attempt to prevent Plaintiff from realizing his rights under the Privacy Act." (*Id.* ¶ 36.) After checking with the NSA's Freedom of Information Act and Privacy Act Office, Fernandes reiterated that "a FOIA request was the exclusive method for Plaintiff to access his Security File," but informed Plaintiff that "under NSA policy, he was prohibited from accessing his Security File unless he withdrew his application." (*Id.* ¶ 37.)

Convinced that this advice was incorrect, on August 24, Plaintiff wrote NSA Customer Care ("NSACC") to report that Fernandes and Gnagey had made "materially incorrect statements of law or fact, and that such statements may have been made as an attempt to dissuade Plaintiff from realizing his rights under the Privacy Act." (Compl. ¶ 39.)[3] That day, Plaintiff received a phone call from Friedl. (*Id.* ¶ 40.) According to Plaintiff, Friedl "shouted at him to never make

---

(Compl. ¶ 16.) Plaintiff further alleges that NSA security experts evaluate an applicant's Security File "to make a final adjudication of security clearance and suitability for national security employment." (*Id.*)

[3] Though Plaintiff repeatedly characterized Fernandes and Gnagey's advice as a criminal effort to prevent him from exercising his rights under the Privacy Act—to both NSA authorities and this Court—his factual allegations do not plausibly suggest criminal fraud; at worst, they appear to reflect confusion regarding the scopes of the Freedom of Information Act and Privacy Act.

3

any complaints to NSACC regarding anyone at OER, and that Plaintiff should know that doing so would carry serious consequences for him." (*Id.*) Rather than backing down, Plaintiff then called and emailed NSACC to report Friedl's "communications from August 24 as an act of retaliation intended to prevent Plaintiff" from reporting Fernandes' and Gnagey's erroneous advice. (*Id.* ¶ 41.) Friedl then called Plaintiff again, and informed him that "she would intercept any further communications Plaintiff made to NSACC, and that she would make sure that she spoke to her supervisor before Plaintiff did." (*Id.* ¶ 42.)

The next day, Plaintiff contacted the NSA Office of the Inspector General ("OIG") and reported on Friedl, Fernandes, and Gnagey. (*Id.* ¶ 44.) He accused the OER employees of "violations of Plaintiff's rights taken in response to his reporting suspected Privacy Act violations and violations of other federal and state laws[.]" (*Id.*) On August 29, Martineau, Friedl's supervisor, emailed Plaintiff back to report "that OER was not privy to any details of the Plaintiff's Security File or Background Information, and that Plaintiff had received all information he needed to answer his questions about the FOIA/PA process." (*Id.* ¶ 45.)

Subsequently, on September 12, 2017 Gnagey informed Plaintiff that the NSA would not be employing Plaintiff and identified "Plaintiff's alleged CCFs" as a security issue. (*Id.* ¶ 46.) Plaintiff speculates that since he had broken all contacts with his CCFs years before his conditional offer was withdrawn, Defendants must have tampered with his Security File (*id.* ¶¶ 142–43), lied to NSA investigators (*id.* ¶¶ 95–96), and otherwise secretly violated the law in coordination to cause his conditional offer to be withdrawn. However, Plaintiff does not allege any knowledge of the inner workings of the NSA's review process or a specific factual basis for his belief that Defendants viewed and tampered with his Security File. To the extent Plaintiff provides any

4

foundation for this belief, it appears to an extrapolation from the fact that Gnagey's email mentioned CCFs.

On October 26, 2017, OIG informed Plaintiff that it had "completed its investigation and found no violation of law or regulation." (*Id.* ¶ 59.) On November 1, Plaintiff appealed the decision to withdraw the conditional employment offer to the Merit Systems Protection Board ("MSPB") arguing that he had been unlawfully retaliated against "after I reported suspected violations of laws and regulations of individuals in the NSA's external recruiting office in violation of [5 U.S.C. § 2302]." (MSPB Initial Decision, Cross Mot. Ex. Z, ECF No. 31-5; *see also* Compl. ¶¶ 60–61.) On February 5, 2018, the MSPB found that it lacked jurisdiction to review the decision to withdraw the conditional offer, as allegations of whistleblower retaliation against NSA applicants are not subject to MSPB review. (MSPB Initial Decision.) Then on February 14, 2018, Blaney's then-wife, who had also received a conditional offer of employment from the NSA, had her offer withdrawn. (Compl. ¶ 62.) The couple subsequently divorced, and Plaintiff blames their experiences with the NSA for driving them apart. (*Id.* ¶¶ 62–70.)

On August 6, 2019, Plaintiff brought the instant lawsuit against the four Defendant NSA employees. (Compl.) He did not sue the NSA itself for the withdrawal of the conditional offer or procedural improprieties in relation to his security adjudication and Privacy Act request. (*Id.*) Instead, Plaintiff sought recovery from the Defendants on the theory that they acted outside the scope of their employment to maliciously persecute him. Plaintiff accuses them of seven common law torts: (1) tortious interference with economic relationships; (2) tortious interference with contract; (3) defamation; (4) intentional infliction of emotional distress; (5) fraud; (6) unjust enrichment; and (7) invasion of privacy. He also seeks relief under federal law, claiming entitlement to damages for: (8) racketeering in violation of 18 U.S.C. § 1964(c); (9) violation of

his constitutional rights under *Bivens*; and (10) violation of his rights under the Privacy Act, 5 U.S.C. § 552a.

The gravamen of Plaintiff's tortious interference, defamation, intentional infliction of emotional distress, unjust enrichment, racketeering, and *Bivens* claims is that Defendants engaged in unlawful whistleblower retaliation by threatening him, inducing the NSA to withdraw his conditional offer, then inducing the NSA to withdraw his ex-wife's conditional offer. Plaintiff's Privacy Act and invasion of privacy claims relate to Defendants' alleged review and manipulation of his Security File, which Plaintiff speculates must have occurred in the course of their retaliation. Plaintiff's fraud claim relates to alleged misrepresentations he speculates Defendants made to NSA investigators, as well as Defendant Fernandes' alleged 2013 statement that she believed the NSA would complete its processing of his application within a year.

On January 2, 2020, Defendants moved to dismiss or for summary judgment, arguing (1) that the Court lacks subject matter jurisdiction over Plaintiff's claims, (2) that Plaintiff has failed to state a claim on which relief can be granted, and (3) alternatively, that Defendants are entitled to summary judgment. (ECF No. 27.) Defendants attached as an exhibit a certification signed by United States Attorney Robert K. Hur pursuant to 28 U.S.C. § 2679(d) and 28 C.F.R. § 15.4 certifying "with respect to the allegations contained in Plaintiff's Complaint" that Defendants "were acting within the scope of their employment as employees of the United States at all times relevant to the allegations contained in Plaintiff's Complaint." (Hur Certification, Mot. Dismiss Ex., ECF No. 27-2.) Plaintiff then made his own cross motion for summary judgment, arguing that Defendants' motion should be denied and that the undisputed facts conclusively establish their liability. (ECF No. 31.) Plaintiff attached an appendix of nearly 40 exhibits substantiating his factual allegations regarding his written communications with Defendants (ECF No. 31-5), as well

as a sworn declaration reiterating the narrative in the Complaint (ECF No. 31-3), and an affidavit declaring under Rule 56(d) that summary judgment against him would be premature (ECF No. 31-2). Defendants submitted an opposition/reply on June 18, 2020 (ECF No. 33), and Plaintiff submitted his own reply (ECF No. 34). Though Plaintiff is proceeding *pro se*, his legal training and skills as an attorney are evident, and his pleadings and briefing are clearer and more comprehensive than a great many of the submissions this Court receives from counseled litigants.

## *II. Legal Standards*

Defendants seek to dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[4] Rule 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015). A challenge to a court's subject matter jurisdiction may be either facial, *i.e.*, the complaint fails to allege facts upon which subject matter jurisdiction can be based, or factual, *i.e.*, the jurisdictional allegations of the complaint are not true. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). In the case of a facial challenge, the Court may grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citations omitted). In the case of a factual challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192.

---

[4] Though Defendants caption their motion as one for summary judgment in the alternative and Plaintiff cross-moves for summary judgment, because the Court finds that Defendants are entitled to dismissal under Rule 12, it need not address the summary judgment standard.

"In considering a motion to dismiss" pursuant to Rule 12(b)(6), the Court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

### *III. Analysis*

Defendants raise two types of challenges to subject matter jurisdiction. First, they argue that Plaintiff is precluded from bringing claims relating to alleged retaliatory personnel actions by the Civil Service Reform Act ("CSRA"). Second, they argue that the United States should be substituted for Defendants in regard to all Plaintiff's common law torts claims, and those claims should be dismissed on the basis of the United States' sovereign immunity. Aside from these overarching jurisdictional challenges, Defendants also contest the merits of Plaintiff's individual claims.

After careful review, the Court agrees with Defendants that the CSRA framework precludes judicial review of Defendants' role in the allegedly retaliatory personnel actions, including the NSA's withdrawal of the conditional employment offers to Plaintiff and his ex-wife. Though this holding leaves Plaintiff without a legal remedy for the Defendants' alleged role in the

(allegedly) retaliatory personnel actions, the Court interprets the relevant precedent to require this outcome. The Court also finds that Plaintiff's remaining claims are subject to dismissal.

### A. CSRA Statutory Framework

Plaintiff's claims relating to the withdrawal of his conditional offer of employment implicate the complex statutory framework governing federal employment. The foundation of this framework is the Civil Service Reform Act of 1978. With the passage of the CSRA, Congress "comprehensively overhauled the civil service system," creating "a new framework for evaluating adverse personnel actions against 'employees' and 'applicants for employment.'" *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 773–74 (1985). "A primary purpose of enacting the CSRA was 'to replace the haphazard arrangements for administrative and judicial review of personnel action' that existed prior to the CSRA." *Hall v. Clinton*, 235 F.3d 202, 204–05 (4th Cir. 2000) (quoting *United States v. Fausto*, 484 U.S. 439, 444 (1988)). As such, the CSRA established a procedure wherein, rather than seeking judicial review from a district court, federal employees and applicants could appeal most adverse personnel actions to the MSPB, then seek judicial review of the MSPB's determination from the Federal Circuit.[5] *See Fausto*, 484 U.S. at 443 (The CSRA "prescribes in great detail the protections and remedies applicable to [personnel actions] including the availability of administrative and judicial review."). Pursuant to this framework, 5 U.S.C. § 2302(b)(8) establishes that an employee of a covered agency may not "take or fail to take, or threaten to take or fail to take, a personnel action . . . because of[] any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences[] any

---

[5] 5 U.S.C. § 7702 specifically exempts from this procedure claims brought under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Rehabilitation Act, and the Fair Labor Standards Act, as well as "mixed case complaints" which incorporate one such claim among others. *C.f. Bonds v. Leavitt*, 629 F.3d 369 (4th Cir. 2011) (discussing the procedure for reviewing such claims). However, since none of Plaintiff's claims relate to discrimination under any of the covered statutes, the § 7702 exemption is inapplicable here.

violation of any law, rule, or regulation," and provides for MSPB review of allegations of whistleblower retaliation.

"Because 'Congress clearly intended the CSRA to be the exclusive remedy for federal employees,' the comprehensive grievance procedures of the CSRA implicitly repealed all other then-existing statutory rights of federal employees regarding personnel decisions." *Hall*, 235 F.3d at 206 (quoting *Pinar v. Dole*, 747 F.2d 899, 913 (4th Cir. 1984)). It also preempted state tort law challenges to federal employment decisions, since allowing such claims would "obstruc[t] the attainment of Congress's policy goal of unifying personnel challenges." *Broughton v. Courtney*, 861 F.2d 639, 643 (11th Cir. 1988). Accordingly, courts have held that "the remedial scheme established by the CSRA is the exclusive remedy for claims arising from federal employment and have declined to exercise jurisdiction over such claims brought in federal district court, whether alleging tort claims pursuant to the Federal Tort Claims Act, or *Bivens* actions for alleged constitutional violations." *Lim v. United States*, Civ. No. DKC 10-2574, 2011 WL 2650889, at *4 (D. Md. July 5, 2011); *see also Crawford v. U.S. Dep't of Homeland Sec.*, 245 F. App'x 369, 374 (5th Cir. 2007) (explaining courts have consistently "rejected constitutional, tort, and contract claims as being precluded by the CSRA"); *Griener v. United States*, 900 F.3d 700, 705 (5th Cir. 2018) (finding court lacked jurisdiction to hear tort claims relating to employee's allegation that he was "fired in retaliation" for whistleblowing).

This bar extends to both claims brought against the agency that took the challenged personnel action and claims brought against individuals who allegedly influenced the agency to do so. For example, in *Hall v. Clinton*, the Fourth Circuit held that a terminated federal employee could not pursue *Bivens* and 42 U.S.C. § 1985 claims against either non-supervisory former coworkers or a non-federal employee for their alleged roles in her termination, since allowing her

10

"to sue those people who may have influenced a supervisor's decision to take a certain personnel action 'would create an obstacle to the attainment of Congress's goal of unifying challenges to federal personnel decisions in a single administrative forum.'" 235 F.3d at 206 (quoting *Broughton*, 861 F.2d at 641 (dismissing malicious interference with employment and conspiracy to interfere with employment claims against federal employee's supervisors)). Other appellate courts have applied the same logic in dismissing claims against individuals whose unlawful acts allegedly caused an agency to take an adverse personnel action. *See, e.g., Mahtesian v. Lee*, 406 F.3d 1131 (9th Cir. 2005) (dismissing tort claims against employees whose alleged defamation caused agency to decide against hiring plaintiff); *Berrios v. Dep't of Army*, 884 F.2d 28 (1st Cir. 1989) (dismissing federal and state law claims relating to supervisors' alleged defamation as preempted); *Gonzalez v. Velez*, 864 F.3d 45, 55 (1st Cir. 2017) (finding CSRA precluded RICO claims related to personnel actions and compiling cases).[6]

Plaintiff recognized that his allegations appeared to implicate the 5 U.S.C. § 2302(b)(8) prohibition on whistleblower retaliation and sought MSPB review of the withdrawal of his conditional offer. (*See* MSPB Initial Decision.) However, the MSPB dismissed his appeal, noting that 5 U.S.C. § 2302(a)(2)(A) specifically exempts the NSA and its fellow intelligence agencies from MSPB review. (*Id.*) Acts of whistleblower retaliation against NSA employees are instead governed by 50 U.S.C. § 3234, which leaves enforcement of whistleblower protections to the

---

[6] The key inquiry in the CSRA preclusion analysis is whether the claims at issue relate to personnel actions. The question of whether a defendant was acting within the "scope of their employment," which determines whether the United States should be substituted as a defendant in the Federal Tort Claims Act context, is not outcome determinative in the CSRA preclusion context. *See Steeves v. United States*, Civ. No. 305-00043, 2006 WL 3526911, at *4 (W.D. Va. Dec. 6, 2006) ("The question of scope of employment under the FTCA is irrelevant" to the CSRA inquiry.), *aff'd*, 234 F. App'x 102 (4th Cir. 2007). As demonstrated by *Hall's* dismissal of claims against a non-federal employee, it is the fact that a lawsuit challenges a personnel action that leads to CSRA preclusion, regardless of whether the individuals who allegedly induced that action were technically acting within the scope of federal employment.

11

President, and "says nothing to permit or otherwise provide for judicial review." *See Pars v. Central Intelligence Agency*, 295 F. Supp. 3d 1, 4 (D.D.C. 2018).

### B. Application of CSRA Framework to Intelligence Agency Employment

The question facing the Court is therefore what to make of the fact that the CSRA framework, which typically precludes district court review of claims related to alleged acts of whistleblower retaliation in federal employment, leaves intelligence agency applicants like Plaintiff with no means of pursuing claims of unlawful retaliation. Plaintiff contends that because the MSPB "cannot provide relief for Plaintiff as a matter of law," Defendant's argument that the CSRA framework deprives the Court of jurisdiction over his claims must be incorrect, since such an outcome would leave him without any means of obtaining judicial review of the alleged retaliatory personnel actions. (Cross-Mot. at 30, ECF No. 31-1.) Put another way, Plaintiff argues that the absence of MSPB review of NSA personnel actions means he must be able to pursue claims against NSA employees for their role in such actions in federal district court.

Plaintiff's argument is contrary to precedent on the issue. As a general principle, the Supreme Court has rejected the idea that the exclusion of certain individuals from the MSPB review process "leav[es] them free to pursue other avenues of review," as undermining the purpose and structure of the CSRA by granting the most extensive review to those Congress evidently intended to exclude from protection. *Fausto*, 484 U.S. 439 (holding that CSRA precluded judicial review of employee's claim that his dismissal violated the Back Pay Act, even though the CSRA did not provide for MSPB review). Accordingly, the Fourth Circuit has held that the absence of a CSRA remedy "is of no moment" when it comes to determining whether the CSRA precludes judicial review of claims against individuals whose alleged unlawful acts led to an adverse personnel action. *Hall*, 235 F.3d at 205 (compiling cases).

*Zimbelman v. Savage*, 228 F.3d 367 (4th Cir. 2000), is particularly instructive. In that case, two former employees of an air force base officer's club—a non-appropriated fund instrumentality ("NAFI")—filed a *Bivens* action against their supervisor and various Air Force employees challenging their termination. Because NAFI employees are not entitled to the administrative remedies provided by the CSRA, plaintiffs argued that they should be permitted to pursue a *Bivens* action in federal court. But the Fourth Circuit rejected this argument, explaining the fact that NAFI employees were "exempted by Congress from the Civil Service Reform Act does not release them from its exclusive remedial framework." *Id.* at 370. Citing, *inter al.*, its decision in *Mann v. Haigh,* 120 F.3d 34 (4th Cir. 1997) and the Eleventh Circuit's decision in *Lee v. Hughes*, 145 F.3d 1272 (11th Cir. 1998), the Fourth Circuit determined that despite the absence of a remedy under the CSRA, it was not for the courts to "substitute our judgment for that of Congress in federal employment disputes" by providing an alternative avenue to challenge an adverse personnel action. *Zimbelman*, 228 F.3d at 371; *see also Mann*, 120 F.3d at 38 (finding CSRA precluded NAFI employee's Administrative Procedure Act claims even though "the CSRA does not grant plaintiff a right to obtain judicial review of his termination."); *Lee*, 145 F.3d at 1275 (finding CSRA precluded federal employee's *Bivens* claim even though it provided no relief, and distinguishing *Davis v. Passman*, 442 U.S. 228 (1979) in part on the ground that the events at issue in *Passman* preceded the passage of the CSRA).

Accordingly, in *Lane v. Wynne*, Judge Messitte of this District found that he lacked jurisdiction to hear a former NAFI employee's claims in relation to his allegedly unlawful termination. Civ. No. PJM-04-1051, 2006 WL 4711891 (D. Md. June 23, 2006), *aff'd*, 218 F. App'x 262 (4th Cir. 2007). Looking to *Zimbelman*, Judge Messitte concluded that beyond merely precluding NAFI employees' *Bivens* actions, the CSRA left "no room for any statutory or

13

common-law claim[,] no matter how [the] claims are characterized[.]" *Id.* at \*4. Judge Messitte noted that "[t]his may be a harsh result, but it is not for this Court to create a remedy where Congress has determined that one should not exist," and the Fourth Circuit affirmed. *Id.*

Though Plaintiff's status as an applicant to an intelligence agency obviously differentiates him from the NAFI employees referenced above, the Court finds that the reasoning of *Fausto, Hall, Zimbelman, Mann,* and *Lane* applies with full force here. Congress' decision to exclude intelligence agencies from the protections of 5 U.S.C. § 2302 and leave intelligence agency employees and applicants without the ability to challenge allegedly retaliatory personnel actions to the MSPB speaks to a clear intention to insulate intelligence agency personnel actions from outside review. *See Doe P v. Goss*, Civ. No. GK-04-2122, 2007 WL 106523, at \*6 (D.D.C. Jan. 12, 2007) (finding CSRA precluded judicial review of CIA personnel actions even though the "CSRA expressly excludes CIA employees from the classes of employees for whom the CSRA's review procedures are available"); *Peter B. v. United States*, 579 F. Supp. 2d 78 (D.D.C. 2008) (same); *McGrath v. Mukasey*, Civ. No. SAS-07-11058, 2008 WL 1781243, at \*8 (S.D.N.Y. Apr. 18, 2008) (finding "Congress intended to bar FBI employees from obtaining any form of external review with respect to whistleblower complaints"). Reading Congress' decision to exclude intelligence agency applicants from the protections of 5 U.S.C. § 2302 as leaving those applicants "free to pursue whatever judicial remedies [they] would have had before enactment of the CSRA" would be contrary to the CSRA statutory framework as analyzed by the Supreme Court and Fourth Circuit, and would defy Congress' intent. *Doe P*, 2007 WL 106523, at \*5 (alterations in original) (quoting *Fausto*, 484 U.S. at 447); *see also Peter B.*, 579 F. Supp. 2d at 82 ("It seems clear (albeit counterintuitive), then, that as CIA employees are expressly excluded from the review procedures under [the CSRA,] they may not seek outside of the CSRA scheme any judicial review of

14

termination decisions."). Though the Court may question the wisdom of Congress' decision to exempt intelligence agency personnel actions of the type Plaintiff challenges from review, it is Congress' determination which must carry the day.

As such, though the Court recognizes the MSPB cannot offer Plaintiff the recourse he seeks, the Court nevertheless finds that the CSRA framework precludes this Court from reviewing the NSA's allegedly retaliatory decisions to withdraw his and his wife's conditional offers, including by hearing claims against the Defendants in relation to their alleged role in the NSA's decisions. Simply put, the CSRA does not permit creative and skilled litigators like Plaintiff to make an end run around the bar on judicial review of allegedly retaliatory NSA personnel actions by framing their challenges as lawsuits against individuals who were allegedly involved in the relevant actions. This holding is fatal to each of Plaintiff's claims that challenges and seeks compensation for Defendants' alleged interference with his prospective NSA employment, including his claims for tortious interference, defamation, intentional infliction of emotional distress, unjust enrichment, racketeering, and violation of his constitutional rights pursuant to *Bivens*. Because the CSRA precludes judicial review of NSA applicants' claims of whistleblower retaliation, these claims must and will be dismissed pursuant to Rule 12(b)(1).[7]

The Court also finds that the CSRA bars Plaintiff's Privacy Act and invasion of privacy claims. On their face, these claims do not directly challenge the withdrawal of the conditional offer of employment, and instead seek compensation for Defendants' alleged review and alteration of Plaintiff's Security File. However, Plaintiff's only evidence that such review and alteration occurred is the withdrawal of his conditional offer, and the damages he seeks are for his loss of

---

[7] The Court notes that though Defendants raised this argument, the Court's analysis goes into greater depth than Defendants' own and explores authorities omitted from Defendants' briefing. While the Court would typically refrain from expanding upon a party's arguments, the Court's independent duty to evaluate its own subject matter jurisdiction necessitates such consideration here.

employment. (*See* Compl. ¶¶ 130–44.) Pursuant to the CSRA, the Privacy Act "cannot be used[] to frustrate the exclusive, comprehensive scheme provided by the CSRA" by providing a secondary route by which to challenge a personnel decision. *Vessella v. Dep't of Air Force*, 995 F.2d 1061 (1st Cir. 1993) (per curiam). Plaintiff is effectively attempting to do just that here, by using speculative and conclusory allegations of Privacy Act violations to provide an alternate avenue to challenge the withdrawal of his offer. As such, these claims must also be dismissed pursuant to Rule 12(b)(1). *See Orsay v. U.S. Dep't of Justice*, 289 F.3d 1125, 1130 (9th Cir. 2002) ("Because Appellants' Privacy Act claims are in fact complaints about 'prohibited personnel practices' under the CSRA, we hold that the CSRA precludes consideration of the claims."), *abrogated on other grounds by Millbrook v. United States*, 569 U.S. 50 (2013); *Henderson v. Soc. Sec. Admin.*, 908 F.2d 559, 560–61 (10th Cir. 1990) ("[T]the Privacy Act does not vest the court with jurisdiction to review personnel decisions where the Civil Service Reform Act precludes such review.").[8]

### C. Fraud Claim

This leaves Plaintiff's fraud claim. This claim is precluded by the CSRA to the extent that Plaintiff alleges Defendants committed fraud in the course of affecting the allegedly retaliatory withdrawal of his employment offer. However, Plaintiff also alleges that Defendant Fernandes committed fraud when she made her "intentionally misleading statement [in] June, 2013" that his adjudication would be complete "within approximately one year of submitting his application." (Compl. ¶ 107.) This claim is not precluded by the CSRA, since it does not relate to the alleged

---

[8] In any event, even if it were not precluded, Plaintiff's Privacy Act claim would still be subject to dismissal. The Privacy Act does not provide for claims against individuals, and Plaintiff's argument that the Court should read the statute to allow such claims is contrary to on-point Fourth Circuit precedent. *See Chesser v. Chesser*, 600 F. App'x 900, 902 n.3 (4th Cir. 2015) (per curiam) (dismissing Privacy Act claims against individuals "because the Act only authorizes suit against federal agencies") (citing *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006)).

16

retaliation or any other adverse personnel action on the part of the NSA. Nevertheless, this claim is subject to dismissal under Rule 12(b)(1) as well, pursuant to the Federal Tort Claims Act ("FTCA").

Under 28 U.S.C. § 2679(d)(1) and 28 C.F.R. § 15.4, when a federal employee is sued, the United States Attorney for the relevant district may submit a certification that the employee "was acting within the scope of [her] office or employment at the time of the incident out of which the claim arose." Unless the plaintiff can "refute the certification of scope of employment" and "prove by a preponderance of the evidence that the defendants were not acting within the scope of their employment," the United States must be substituted as the party defendant. *Maron v. United States*, 126 F.3d 317, 323 (4th Cir. 1997).

Here, the United States Attorney for the District of Maryland submitted such a certification as to all the Defendants, including Defendant Fernandes. (Hur Certification.) Plaintiff devotes much of his Complaint and briefing to arguing that Defendants' alleged acts of retaliation occurred outside the scope of their employment. But he does not specifically allege or argue that Fernandes' prediction regarding the duration of his security processing fell outside the scope of her employment. Nor could he credibly do so; providing applicants with information regarding the recruitment process is self-evidently within the core of a recruiter's role, and Plaintiff has alleged no facts indicating that Fernandes' had any personal animus against him in 2013. Therefore, substitution is required.

Because the Court grants substitution as to this claim, it must also grant dismissal on sovereign immunity grounds. While the United States has waived its immunity to certain tort claims through the Federal Tort Claims Act, the United States has not waived its immunity to suit for intentional torts and "claims 'arising out of' those torts." *Hampel v. United States*, 706 F. Supp.

2d 629, 632 (D. Md. 2002) (quoting 28 U.S.C. § 2680(h)); *see also Owyhee Grazing Ass'n, Inc. v. Field,* 637 F.2d 694, 697 (9th Cir. 1981) (explaining that "claims against the United States for fraud or misrepresentation by a federal officer are absolutely barred"). Accordingly, following substitution, Plaintiff's fraud claim will be dismissed.

### IV.   *Conclusion*

For the foregoing reasons, an order shall enter granting Defendants' motion to dismiss and denying Plaintiff's cross motion for summary judgment.

DATED this 16th day of September, 2020.

BY THE COURT:

*/s/ James K. Bredar*

James K. Bredar
Chief Judge