## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ROBERT BLANEY,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | |
| | * | **CIVIL NO. JKB-19-2264** |
| **BEATRIZ GONZALEZ,** *et al.*, | * | |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM AND ORDER

In March 2013, Plaintiff Robert Blaney applied for a position with the National Security Agency ("NSA"). After a prolonged application period, Plaintiff's conditional offer of employment with the NSA was ultimately withdrawn. Subsequently, Plaintiff filed this lawsuit against four NSA employees alleging that the withdrawal of his offer was retaliation for complaints he had lodged against them with NSA Customer Care ("NSACC") and the NSA Office of the Inspector General (the "NSA OIG"). This Court dismissed Plaintiff's Complaint (ECF No. 35), finding that the Civil Service Reform Act ("CSRA") precluded judicial review of personnel actions taken by intelligence agencies, including the NSA. Now pending before the Court is Plaintiff's Motion to Alter or Amend the Court's September 16, 2020 Order and Judgment. (ECF No. 37.) The motion is fully briefed, and no hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, Plaintiff's motion will be denied.

## I.   *Background[1]*

Plaintiff is a Maryland resident and former NSA applicant.  (Compl. ¶ 5, ECF No. 1.) According to the allegations in the Complaint, the Defendants—Beatriz Friedl (formerly Beatriz Gonzalez), Jennifer Fernandes, Jessica Gnagey, and Brenda Martineau—are NSA employees in the Office of External Recruiting ("OER").  (*Id.* ¶¶ 6–9.)

In 2013, Plaintiff applied for a position as a language analyst at the NSA and received a conditional offer of employment.  (*Id.* ¶ 12.)  However, the required security processes for the position lasted several years. (*See id.* ¶¶ 18–33.)  Olena Blaney, who is now Plaintiff's ex-wife, also applied for and received a conditional offer to work at the NSA during this time.  (*Id.* ¶ 30.)

In 2017, Plaintiff attempted to accelerate his security clearance adjudication by working with his recruiters, Gnagey and Fernandes.  (*Id.* ¶ 35.)  Specifically, on March 20, 2017, Plaintiff emailed OER to request an update and ask whether he could access his Security File, which the NSA uses "to make a final adjudication of security clearance and suitability for national security employment" and includes "the results of [the applicant's] Background Investigation, a polygraph examination, and a psychological examination."  (*Id.* ¶¶ 16, 33.)  Gnagey emailed Plaintiff back, reporting "that no individual at OER could access his Security File, because doing so was legally prohibited by the Privacy Act." (*Id.* ¶ 34.)  In August 2017, Plaintiff again reached out regarding his Security File and was informed by Gnagey and Fernandes that he could access his Security File through a Freedom of Information Act ("FOIA") request.  (*Id.* ¶ 35.)  Plaintiff responded that he believed the appropriate mechanism to access his Security File was a Privacy Act request and raised "concern[s] that their insistence on Plaintiff using incorrect methods to access his Security

---

[1] In this section, the Court summarizes the alleged facts that Plaintiff has identified as relevant to the instant motion. The Court provides more details describing the background of this dispute in its Memorandum dismissing the Complaint. (ECF No. 35.)

File could be considered an attempt to prevent Plaintiff from realizing his rights under the Privacy Act." (*Id.* ¶ 36.) After Defendants responded that a FOIA request was the appropriate avenue for obtaining the Security File, Plaintiff escalated his concerns to NSACC. (*Id.* ¶¶ 37, 39.)

After contacting NSACC, Plaintiff allegedly received a phone call from Friedl, who "shouted at him to never make any complaints to NSACC regarding anyone at OER, and that Plaintiff should know that doing so would carry serious consequences for him." (*Id.* ¶ 40.) Plaintiff, in turn, reported Friedl to NSACC, whereupon she allegedly again contacted Plaintiff and asked whether Plaintiff would like to speak to her supervisor. (*Id.* ¶ 42.) After Plaintiff replied that he would, Friedl allegedly informed him that "she would intercept any further communications Plaintiff made to NSACC, and that she would make sure that she spoke to her supervisor before Plaintiff did." (*Id.*) On August 25, 2017, Plaintiff reported the sum of his communications with Defendants to the NSA OIG, which ultimately "found no violation of law or regulation" after an investigation. (*Id.* ¶¶ 44, 59.)

Four days after Plaintiff complained to the NSA OIG, Friedl's supervisor, Martineau, informed Plaintiff that "OER was not privy to any details of the Plaintiff's Security File or Background Information, and that Plaintiff had received all information he needed to answer his questions about the FOIA/PA process." (*Id.* ¶ 45.) On September 12, 2017, Gnagey informed Plaintiff that the NSA had withdrawn its employment offer. (*Id.* ¶ 46.)

Plaintiff appealed the decision to withdraw his conditional offer to the Merit Systems Protection Board ("MSPB"). (*Id.* ¶ 60.) On February 5, 2018, the MSPB dismissed Plaintiff's appeal for lack of jurisdiction. (*Id.* ¶ 61.) Less than two weeks later, Gnagey informed Plaintiff's ex-wife that the NSA was withdrawing her offer of employment. (*Id.* ¶ 62.)

On August 6, 2019, Plaintiff brought this lawsuit, alleging common law, statutory, and constitutional claims against Defendants. (*Id.* ¶¶ 81–144.) Defendants moved to dismiss or for summary judgment (ECF No. 27), and Plaintiff filed a cross-motion for summary judgment (ECF No. 31). In its Memorandum of September 16, 2020 (the "Dismissal"), the Court dismissed Plaintiff's Complaint, finding *inter alia* that the Court lacks jurisdiction over this dispute pursuant to the CSRA. (*See* ECF No. 35.) On October 14, 2020, Plaintiff filed this motion requesting that the Court alter or amend the Dismissal under Federal Rule of Civil Procedure 59(e). (ECF No. 37.)

## II.    Legal Standard

"Federal Rule of Civil Procedure 59(e) permits the district court to reconsider a decision in certain circumstances." *Hughley v. Matthew Carpenter, P.A.*, Civ. No. JKB-19-1950, 2020 WL 6703717, at *1 (D. Md. Nov. 13, 2020) (quoting *Ross v. Early*, 899 F. Supp. 2d 415, 420 (D. Md. 2012)). In the Fourth Circuit, "Rule 59(e) motions can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007) (internal quotation marks omitted). "Clear error or manifest injustice occurs where a court has patently misunderstood a party or has made a decision outside the adversarial issues present to the Court by the parties, or has made an error not of reasoning but of apprehension." *Wagner v. Warden*, Civ No. ELH-14-791, 2016 WL 1169937, at *3 (D. Md. Mar. 24, 2016) (internal citations and quotation marks omitted).

Although Rule 59(e) "permits a district court to correct its own errors," it "may not be used [] to raise arguments which could have been raised prior to the issuance of the judgment, nor may [it] be used to argue a case under a novel legal theory that the party had the ability to address in

4

the first instance." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citing *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)). The court should also keep in mind that "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.*

### III.   Analysis

As explained in the Dismissal, Plaintiff's claims run squarely into the CSRA, which was enacted to "replace the haphazard arrangements for administrative and judicial review of personnel action that existed prior to the CSRA." *Hall v. Clinton*, 235 F.3d 202, 204 (4th Cir. 2000). "Because Congress clearly intended the CSRA to be the exclusive remedy for federal employees, the comprehensive grievance procedures of the CSRA implicitly repealed all other then-existing statutory rights of federal employees regarding personnel decisions." *Id.* at 206. Similarly, "state law challenges to federal personnel actions within the scope of the CSRA are 'preempted' by the CSRA." *Petrini v. Howard*, 918 F.2d 1482, 1484 (10th Cir. 1990) (collecting cases). Importantly, this comprehensive procedure not only prevents judicial review of federal employment decisions for employees and applicants who can seek review under the CSRA, but also "demonstrates Congress' intent to entirely foreclose judicial review to employees to whom the CSRA *denies* statutory review." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11 (2012) (emphasis in original) (internal quotations and citations omitted). In sum, judicial review outside the procedures mandated by the CSRA is entirely foreclosed "for claims arising out of federal employment." *Fleming v. Spencer*, 718 F. App'x 185, 186 (4th Cir. 2018).

In its Dismissal, the Court concluded that Plaintiff's claims were all attempts, directly or indirectly, to seek review of the NSA's withdrawal of his conditional offer, a personnel action covered by Chapter 23 of the CSRA. (ECF No. 35 at 15–16.) Though he now rejects this

5

conclusion, it appears that Plaintiff was originally of a similar view, as prior to filing this case he raised most of these claims with the MSPB.[2] (MSPB Dismissal, Pl. Mot. Summ. J. Ex. Z, ECF No. 31-5 at 119 (explaining that Plaintiff's MSPB appeal alleges that the NSA "terminated a conditional offer of employment after [he] reported suspected violations of laws and regulations."). The Court's—and Plaintiff's—original judgment as to the nature of these claims is undoubtedly correct as his Complaint only alleges claims related his application to the NSA.  Specifically, Plaintiff alleged that Defendants: interfered with his economic relationship with the NSA (Claims I and II); committed various forms of fraud to create a pretext to withdraw his NSA offer (Claims III, V, IX, and X); retaliated against him for reporting their misconduct by creating a pretext to withdraw his offer (Claim VIII); and did all of these things as part of an ongoing conspiracy, thereby violating RICO (Claim VII).  He also claims that this conduct caused him severe emotional distress (Claim IV) and that Defendants were unjustly enriched thereby (Claim VI).  *See Hall v. Clinton*, 235 F.3d 202, 205–06 (4th Cir. 2000) ("The salient fact [in determining CSRA preclusion] is that the wrong acts [plaintiff] alleges were taken against her arose out of her federal employment relationship.").

Despite Plaintiff's creative pleading, the Court rejected his attempt to "make an end run around the bar on judicial review of allegedly retaliatory NSA personnel actions by framing [his] challenges as lawsuits against individuals who were allegedly involved in the relevant actions." (ECF No. 35 at 15); *see also Hall*, 235 F.3d at 205–06; *Crawford v. U.S. Dep't of Homeland Sec.*, 245 F. App'x 369, 374–75 (5th Cir. 2007) (finding that the CSRA precluded causes of action where "review of [plaintiff's] complaint shows that all her claims are related to her interaction with the government regarding the position she was seeking").

---

[2] The only claims which were not before the MSPB are claims arising out of the withdrawal of Plaintiff's ex-wife's conditional offer, which occurred after the dismissal of his appeal.  (Compl. ¶¶ 60–61.)

In seeking reconsideration of this conclusion, Plaintiff accuses the Court's approach of repeatedly overextending the CSRA. As a preliminary matter, the Court notes that accepting Plaintiff's myopic and technical reading of the CSRA would create significant exceptions to the "integrated scheme of administrative and judicial review" created by the CSRA. *United States v. Fausto*, 484 U.S. 439, 445 (1988). These exceptions would "undermine the . . . structur[e] of the Act" because "for random categories of employees, legally enforceable employment entitlements will exist that are not subject to the unifying authority . . . of the MSPB." *Id.* at 451. Therefore, even if Plaintiff's meticulous parsing of the CSRA's text and its application to his claims were plausible in a vacuum, he fails to address "the CSRA's elaborate *framework*, [which] demonstrates Congress' intent to entirely foreclose judicial review to employees for whom the CSRA *denies* statutory review." *Elgin*, 567 U.S. at 11 (some emphasis added). The CSRA constitutes a meaningful limit on this Court's authority to address grievances arising from federal employment—not a formalistic hurdle to be jumped over by creative litigants. *See Fleming*, 718 F. App'x at 186. Although here that leaves Plaintiff with no forum for his grievance, that result does not permit this Court to rewrite the CSRA or the binding precedent interpreting it. Because denying Plaintiff any forum for his grievance is an admittedly draconian outcome, the Court explains in detail why the arguments advanced in the present motion do not alter the Court's initial view that it is nonetheless required by the CSRA. This is particularly true when viewed through the demanding lens of a Rule 59(e) motion for reconsideration.

### A. *Rule 59(e)'s Procedural Requirements*[3]

Plaintiff seeks reconsideration on the grounds of "legal error and manifest injustice," and identifies various purported errors in the Court's original analysis regarding the scope of the CSRA. (Mot. Amend Mem. Supp. at 5, ECF No. 37-1.) Although CSRA preclusion was raised in the prior briefing, Plaintiff argues that he "did not have the opportunity to address the specific case law and issues forming the basis of Dismissal." (*Id.* at 6.) Due to this, Plaintiff argues that the legal errors he identifies do not fall within Rule 59(e)'s bar on "rais[ing] arguments which could have been raised prior to the issuance of the judgment." *Pac. Ins. Co.*, 148 F.3d at 403.

While CSRA preclusion was raised in the parties' briefs, the Court acknowledged that the Dismissal was primarily driven by its "independent duty to evaluate its own subject matter jurisdiction." (ECF No. 35 at 15 n.7); *see also Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 480 (4th Cir. 2005). Because of this, the Court finds it would be unduly curt to simply dispose of Plaintiff's motion by noting that a "Rule 59(e) motion [] may not be used to relitigate old matters." *Collins v. Thornton*, 782 F. App'x 264, 268 (4th Cir. 2019) (quoting *Pac. Ins. Co.*, 148 F.3d at 403).

Nonetheless, Plaintiff must still carry his burden of "identify[ing] a clear error of law," as a prerequisite for reconsideration under Rule 59(e). *Hunt v. Branch Banking & Tr. Co.*, 480 F. App'x 730, 731 (4th Cir. 2012). "To justify reconsideration on this basis, the prior judgment cannot be 'just maybe or probably wrong; it must . . . strike the court as wrong with the force of a five-week-old, unrefrigerated dead fish." *Fontell v. Hassett*, 891 F. Supp. 2d 739, 741 (D. Md.

---

[3] Defendants' briefing relies primarily on Rule 59(e)'s stringent standards as a basis for denying reconsideration, noting that all of Plaintiff's arguments were already considered by the Court in the Dismissal and none amounts to clear error. (*See, e.g.*, Resp. 3–5, ECF No. 42.) Although the Court writes at length due to the implications of its holding, it also wishes to accredit Defendants' arguments on this score as fundamentally correct. Plaintiff clearly fails to meet the high bar for reconsideration set by Rule 59(e). The Court's exhaustive elucidation of the reasons his arguments lack *substantive* merit should not be taken as evidence that more meritorious arguments would necessarily satisfy these rigorous *procedural* requirements.

8

2012) (quoting *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009)).  For the reasons set forth below, the Court finds no error—much less, clear error—in its initial analysis of Plaintiff's claims.  Accordingly, reconsideration will be denied.

### B. Merits of Plaintiff's Arguments

As Plaintiff's substantive objections to the Dismissal are myriad—and at times, not fully explained—the Court reads the instant motion as raising eight grounds for reconsideration. Namely, Plaintiff argues that the Court erred in finding that (1) *United States v. Fausto*, 484 U.S. 439 (1988) and its progeny apply to federal applicants in addition to federal employees; (2) the NSA can commit personnel actions under Chapter 23 of the CSRA; (3) the CSRA applies to conduct allegedly outside the scope of a defendant's employment; (4) the CSRA applies to allegedly unlawful conduct; (5) the CSRA applies to conduct by Defendants other than the actual withdrawal of Plaintiff's offer; (6) the CSRA applies to the withdrawal of Plaintiff's ex-wife's offer; (7) the CSRA applies to Plaintiff's Privacy Act claim; and (8) the CSRA applies to Plaintiff's claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1978).  On meticulous reconsideration, the Court finds that none of these arguments has merit, much less that they identify a "clear error of law" or "manifest injustice" resulting from the Dismissal.  *See Zinkand*, 478 F.3d at 637.  As a result, even setting aside its procedural deficiencies, Plaintiff's motion to alter or amend the Dismissal under Rule 59(e) must be denied.

### i. Employee/Applicant Distinction

Chapters 23, 43, and 75 of the CSRA define the rights of federal employees and applicants with respect to personnel actions.  Chapter 23 prohibits personnel actions taken for certain reasons, such as personnel actions that are discriminatory or retaliatory.  *See generally*, 5 U.S.C. § 2302. By contrast, Chapters 43 and 75 provide certain procedures—such as notice and opportunity to be

9

heard—with respect to particular personnel actions, regardless of motivation. Chapter 43 addresses actions "based on unacceptable performance," 5 U.S.C. § 4303, while Chapter 75 addresses suspensions, removal, reduction in grade or pay, or furlough of less than 30 days. *See* 5 U.S.C. §§ 7501–04, 7511–15.[4] Only Chapter 23 applies to applicants, due to their more attenuated relationship with the federal government. *Compare* 5 U.S.C. § 2302(a)(2)(A) (applicable to "employees in, or applicants for" federal employment); *with* 5 U.S.C. § 4303(a) (applicable only to employees); 5 U.S.C. § 7513(a) (same).

Plaintiff argues that the more limited set of rights held by applicants precludes the extension of *United States v. Fausto* to lawsuits by those applicants seeking review for personnel actions covered by Chapter 23 of the CSRA. To reiterate, *Fausto* involved a non-preference eligible federal employee who sought judicial review of a thirty-day suspension. 484 U.S. at 440. While the personnel action challenged by the plaintiff employee was within the ambit of Chapter 75, that chapter applied only to "preference eligible [employees] in the excepted service." *See* 75 U.S.C. § 7511(a)(1)(B).[5] The Supreme Court concluded that the employee's exclusion from Chapter 75, "display[ed] a clear congressional intent to deny the excluded employees from the protections of Chapter 75—including judicial review—for personnel actions covered by that chapter." *Fausto*, 484 U.S. at 447. The Court's conclusion was buttressed by concerns that district court review of federal personnel actions would seriously undermine the purposes of the CSRA, including the goal of providing a "unitary and consistent Executive Branch position on matters involving personnel action." *Id.* at 449. *Fausto* therefore established that challenges to federal

---

[4] All of these personnel actions are also included in Chapter 23, meaning that they cannot be taken for a prohibited purpose even if Chapter 43 or 75's procedural requirements are met. *See* 5 U.S.C. §§ 2302(a)(2)(A)(iii), (viii).

[5] After *Fausto*, Chapter 75 was quickly amended to provide for MSPB review for certain non-preference excepted service employees. *See* Pub. L. 102–378, 104 Stat. 461 (Aug. 17, 1990) ("amend[ing] title 5, United States Code, to grant appeal rights to members of the excepted service affected by adverse personnel actions, and for other purposes").

personnel actions may either proceed under the statutory review scheme laid out by the CSRA, or they may not proceed at all. *See Elgin*, 567 U.S. at 11 ("[T]he CSRA's elaborate framework demonstrates Congress' intent to entirely foreclose judicial review to employees to whom the CSRA *denies* statutory review.") (internal quotation marks and citation omitted).

Although courts have consistently applied *Fausto* to intelligence agency *employees, see, e.g., Doe P v. Goss*, Civ. No. GK-04-2122, 2007 WL 106523, at *6 (D.D.C. Jan. 12, 2007), Plaintiff contends that the Court erred in extending the reasoning of *Fausto* to intelligence agency *applicants* in the Dismissal. Plaintiff argues that the holding in *Fausto* was driven by "the interplay between chapters 23, 43, and 75." (Mot. Amend. Mem. Supp. at 16.) Because an applicant's rights are solely defined under Chapter 23 and lack this "interplay," Plaintiff concludes that *Fausto* does not extend to applicants. This is plainly incorrect.

First, both NSA employees and NSA applicants are excluded from Chapter 23 of the CSRA under the same provision. *See* 5 U.S.C. § 2302(a)(2)(C) (excluding from the definition of "personnel action" any action taken by an intelligence agency, including the NSA). As noted, this provision has already been applied to foreclose judicial review of personnel actions by intelligence agency employees, without analysis of its "interplay" with other CSRA chapters. *See Lamb v. Holder*, 82 F. Supp. 3d 416, 422 (D.D.C. 2015). This is because the principle established in *Fausto* is far more straightforward than Plaintiff contends. *Fausto* simply holds that the denial of statutory review under the CSRA equally forecloses judicial review to avoid creating "legally enforceable employment entitlements that are not subject to the unifying authority . . . of the MSPB." *Fausto*, 484 U.S. at 451.

Further, unlike in *Fausto*, employees and applicants to the NSA are explicitly excluded from Chapter 23 of the CSRA. *See* 5 U.S.C. § 2302(a)(2)(C)(ii)(I) (excluding the NSA from the

11

list of "agencies" who are covered by Chapter 23). *Fausto* discussed the "interplay between chapters 23, 43, and 75" solely to confirm that the implicit omission of a class of employees from MSPB review was deliberate, rather than an oversight. *Id.* at 447–48. This was necessary because Chapter 75 affirmatively applied only to preference eligible employees but was silent on the rights of their non-preference eligible counterparts. In confirming that "congressional silence" on non-preference eligible employees reflected "clear congressional intent to deny the excluded employees the protections of Chapter 75" the Supreme Court used Chapters 23 and 43 to show that "[t]heir exclusion from the scope of those protections can hardly be explained on the theory that Congress simply did not have them in mind." *Fausto*, 484 U.S. at 448. This same analysis is unnecessary here because there is no "congressional silence" to interpret in Chapter 23. NSA applicants are not implicitly omitted, but instead explicitly carved out of Chapter 23. This carveout "displays a clear congressional intent to deny the excluded employees the protections of Chapter [23]—including judicial review—for personnel action covered by the chapter." *Id.* at 447.

As a potentially independent corollary to his statutory argument, Plaintiff also argues that this case is distinguishable from the employee cases because he "does not seek to reverse or otherwise challenge the withdrawal of his conditional offer, or to receive any benefits of his potential employment." (Mot. Amend Mem. Supp. at 16.) While the remedy sought by a plaintiff is plausibly probative of whether his or her claims "aris[e] from a federal employment relationship," *Fleming*, 718 F. App'x at 186, Plaintiff cites no case law for the proposition that the remedy sought is determinative, or even decisively relevant here.

Even assuming *arguendo* that Plaintiff's claims should be viewed through a remedial lens, the Complaint would still fall squarely within the scope of the CSRA. As Plaintiff acknowledges, the remedies he seeks in this case aim to "put him in the same position as if he had never undergone

12

the arduous application process to become an NSA employee." (Mot. Amend Mem. Supp. at 16.) This concession confirms that Plaintiff's claims fall within the CSRA, which applies where "review of [the] complaint shows that all of [plaintiff's] claims are related to [their] interaction with the government regarding the position [they] were seeking." *Crawford v. U.S. Dep't of Homeland Sec.*, 245 F. App'x 369, 374–75 (5th Cir. 2007).

### ii.  Personnel Actions under Chapter 23

Plaintiff next argues that differences in the statutory text of Chapters 23 and 75 counsel against extending *Fausto* to personnel actions by intelligence agencies under Chapter 23.  He contends that while neither chapter provides statutory review of personnel actions by intelligence agencies, the way in which they do so has different implications for the availability of judicial review of those same personnel actions.

To compare, *Fausto* addressed Chapter 75 which, "does not apply to an employee" at "an intelligence component of the Department of Defense," 5 U.S.C. § 7511(b)(8), a term which includes the NSA. *See* 10 U.S.C. § 1614(2)(A).  By contrast, Chapter 23 covers "personnel action," taken against employees or applicants for "a covered position in an agency," 5 U.S.C. § 2302(a)(2)(A), but specifies that "agency" does not include the NSA.  5 U.S.C. § 2302(a)(2)(C)(ii)(I).

Plaintiff argues that because Chapter 23 provides that the NSA does not constitute an "agency," the NSA is incapable of committing "personnel actions" under Chapter 23.  (Mot. Amend Mem. Supp. at 11.)  He contrasts this with Chapter 75, where the relevant provisions are rendered inapplicable at the employee, rather than the agency level.  The logical conclusion of this distinction, he believes, is that *Fausto* does not bar NSA applicants (or employees) from seeking

judicial review for claims covered by Chapter 23 as doing so does not seek review of a "personnel action covered by that chapter." *Fausto*, 484 U.S. at 448.

A proper reading of *Fausto* denies this rigid interpretation and makes clear that the relevant "congressional judgment [was] that those employees should not be able to demand judicial review for the *type of* personnel action covered by that chapter." *Id.* (emphasis added). Indeed, "the CSRA's elaborate framework demonstrates Congress' intent to entirely foreclose judicial review to employees to whom the CSRA *denies* statutory review." *Elgin*, 567 U.S. at 11 (emphasis in original). Although Chapter 23 may deny Plaintiff statutory review through different language than Chapter 75, there is no doubt that it denies him such review. *See, e.g., Lamb v. Holder*, 82 F. Supp. 3d 416, 422 (D.D.C. 2015) ("While decisions concerning [Chapter 23] are generally within the scope of the CSRA, such decisions taken at the FBI, however, are not."); *see also* 5 U.S.C. § 2302(a)(2)(c)(ii) (including the FBI and NSA in same exclusion provision). There is also no doubt that he would be able to obtain statutory review before the MSPB, but for his status as an intelligence agency applicant. *Id.* In sum, despite stylistic differences between the chapters, the exclusionary language in Chapter 23 still reflects a "clear congressional intent to deny the excluded employees the protections of [the CSRA]—including judicial review." *Fausto*, 484 U.S. at 447.

Even if congressional intent were ambiguous, Plaintiff's interpretation of Chapter 23 would need to be rejected to avoid yielding absurd results when read in tandem with 50 U.S.C. § 3234. That statute applies only to employees and covers retaliatory personnel actions taken by intelligence agencies. *See* § 3234(b). Under Section 3234, these actions are subject to review only by the President. *See* § 3234 (d). Applying Plaintiff's theory, allegedly retaliatory personnel action with respect to intelligence agency *employees* would be subject to this narrow executive review, while those agencies' *applicants* would enjoy a more robust right to judicial review than any other

14

class of person with respect to federal employment. Plaintiff provides no reason that Congress would have created such an inconsistent hierarchy of review, nor why they would make intelligence agency applicants the most favored class of federal personnel. A far more harmonious reading of the relevant statutes is that Congress intended to deny statutory CSRA review for retaliation claims to the intelligence community; to provide a more limited review centered in the President to intelligence agency employees; and to exclude applicants from statutory and judicial review. *Elgin*, 567 U.S. at 11; *see also Doe P v. Goss*, Civ. No. GK-04-2122, 2007 WL 106523, at *6 (D.D.C. Jan. 12, 2007).

The legislative history also confirms this point. A Senate Report addressing precisely this issue explains that Congress did "not extend whistleblower protections to applicants for intelligence positions" because "applicants for intelligence positions are more likely to be unreliable than individuals who have already been hired into the intelligence community as employees and are less likely to have valuable information about waste, fraud, and abuse to disclose." S. REP. NO. 112-155, at 80, *as reprinted in* 2012 U.S.C.C.A.N. 589, 643 n.132. The Court's prior decision read the statute in line with Congressional intent as expressed both in the Senate Report and the text, and therefore was not clear error.

### iii. Scope of Employment

Although framed as a failure to order necessary jurisdictional discovery, Plaintiff's third contention is, in substance, that the Court erred in determining that the scope of Defendants' employment was inapposite to the scope of the CSRA. (*See* Mot. Amend Mem. Supp. at 6.) Plaintiff argues that if he is correct on this underlying point, then the Court could not resolve the jurisdictional issues raised by the CSRA without an evidentiary hearing. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) ("[T]rial court may [] go beyond the allegations in the

15

complaint *and in an evidentiary hearing* determine if there are facts to support the jurisdictional allegations" if defendant contends "that the jurisdictional allegations of the complaint are not true.") (emphasis added) (internal quotation marks and citation omitted).

In support, Plaintiff cites cases where the CSRA did not apply to claims arising from conduct that was outside the scope of a defendant's employment. *See Orsay v. U.S. Dep't of Justice*, 289 F.3d 1125 (9th Cir. 2002) (defendant pointed a loaded gun at plaintiff); *Gilding v. Carr*, 608 F. Supp. 2d 1147 (D. Az. 2009) (defendant employees commented on public message board); *Beatty v. Thomas*, Civ. No. 05-0071, 2005 WL 1667745, at *8 –*9 (E.D. Va. June 13, 2005) (defendants unlawfully disseminated information outside of agency). Plaintiff's reliance on these decisions confuses correlation with causation. All these cases found that the CSRA did not apply because defendants did not engage in personnel actions, but that conclusion was not affected by the fact that defendants' conduct may have also exceeded the scope of their employment.

For instance, in *Orsay v. United States Department of Justice*, the plaintiffs brought Federal Tort Claims Act claims against a supervisor who, *inter alia*, pointed a loaded gun at them and then subsequently received minimal punishment for doing so. *Id.* at 1127. The Ninth Circuit held that plaintiffs' claims for assault and intentional infliction of emotional distress were not barred by the CSRA because the "alleged aiming of a loaded weapon at [plaintiffs] does not fit any of the CSRA's definitions of personnel action." *Id.* at 1131. By contrast, the CSRA *did* preclude jurisdiction over plaintiffs' "complaints about the supposedly minimal punishment" because those claims "address . . . one of the CSRA's categories of 'personnel action.'" *Id.* at 1132. The scope of defendant's duties did not factor into the Ninth Circuit's analysis at all, which instead focused on whether plaintiffs' complaint sought to address conduct that constituted a personnel action. *See also Steeves v. United States*, Civ. No. 305-0043, 2006 WL 3526911, at *4 (W.D. Va. Dec. 6,

16

2006) ("The question of scope of employment under the FTCA is irrelevant in Counts [related to the CSRA]. Since all the acts complained of are based on Plaintiff's federal employment, the FTCA is not available as a remedy even if some of the acts—e.g., violations of Plaintiff's due-process rights—are arguably beyond the scope of defendants' employment.").

These cases confirm that an inquiry into whether alleged conduct was within the scope of a defendant's employment has no bearing on whether the CSRA precludes judicial review. Instead, the relevant inquiry is whether a plaintiff seeks to challenge a personnel action. Accordingly, the Court finds no error in its initial decision not to hold an evidentiary hearing regarding the scope of Defendants' employment prior to dismissing the Complaint.

### iv.  Criminal Conduct

Plaintiff next claims that the Court erred in concluding that "criminal conduct is within the scope of the CSRA." (Mot. Amend Mem. Supp. at 10.) This contention follows the same false syllogism as Plaintiff's arguments regarding the relevance of scope of employment. Simply because there are cases where defendants have committed unlawful conduct that is also outside the scope of the CSRA does not mean that allegations of unlawful conduct *per se* place a claim outside the scope of the CSRA. In arguing otherwise, Plaintiff ignores cases cited in the Dismissal rejecting as jurisdictionally barred claims of unlawful conduct similar to those alleged here. *See, e.g.*, *Gonzalez v. Velez*, 864 F.3d 45, 55 (1st Cir. 2017) (dismissing RICO claims and collecting cases).

Even where unlawful conduct is alleged, the CSRA inquiry remains whether Plaintiff seeks "judicial review [] for personnel action covered by [the CSRA]." *Fausto*, 484 U.S. at 447. Plaintiff cites cases that involve allegations of criminal conduct with *actus rei* that are clearly not personnel actions. *Orsay*, 289 F.3d at 1131 (pointing a loaded gun at subordinates); *Collins v. Bender*, 195

F.3d 1076, 1079 (9th Cir. 1999) (warrantless search of former federal employee's home); *Brock v. United States*, 64 F.3d 1421, 1422 (9th Cir. 1995) (rape).   In those cases, the Ninth Circuit repeatedly, and correctly, rejected attempts to fit those claims within the CSRA simply because they were actions by federal personnel. *See Brock*, 64 F.3d at 1424.

Here, Plaintiff attempts to do the reverse and avoid the CSRA by dressing up a personnel action with speculative allegations of criminality.   Determining the scope of CSRA preclusion, however, entails a practical examination of the type of conduct for which a plaintiff seeks judicial review. *See Bloch v. Exec. Off. of the President*, 164 F. Supp. 3d 841, 857 (E.D. Va. 2016) ("[A] civil RICO claim like the one plaintiff asserts here, namely alleging unlawful activity in connection with plaintiff's removal from federal employment, is precluded under the CSRA . . . [where] for all intents and purposes plaintiff is attempting to use RICO as a statutory remedy for an injury that arises from a federal personnel action.").   Under this functional analysis, Plaintiff's claims are squarely within the CSRA.   Therefore, the Court finds no error in its prior conclusion that Plaintiff's claims were subject to the CSRA's jurisdictional bar despite his allegations of criminality.

### v.   *Non-Personnel Action "Retaliatory Acts"*

Fifth, Plaintiff contends that this Court erred in applying the CSRA to his Complaint because he alleged three "Retaliatory Acts," based on Friedl's phone calls, that he argues were not personnel actions. (*See* Mot. Amend Mem. Supp. at 13.)   The alleged phone calls do, however, fall within the scope of 5 U.S.C. § 2302(b)(8), which includes not only "tak[ing] or fail[ing] to take" personnel action but also "threaten[ing] to take or fail to take, a personnel action" for retaliatory reasons. *Id.*

18

Additionally, Plaintiff's arguments reflect a fundamental misunderstanding about how allegations are construed in the context of CSRA preclusion. Here, Plaintiff does not seek redress for harm arising independently from Friedl's phone calls or any other allegedly extracurricular or illegal conduct by Defendants. Instead his claims arise solely from the withdrawal of his employment offer. Because his *claims* challenge the withdrawal of his offer, alleged conduct surrounding that withdrawal involving threats; falling outside of the scope of employment; or even averring criminality only go to show that the withdrawal was potentially a *prohibited* personnel action. *See generally* 5 U.S.C. § 2302 (titled and outlining "[p]rohibited personnel practices"). However, without bringing a claim that addresses a harm other than the withdrawal of his offer, Plaintiff cannot avoid the CSRA's bar on judicial review of personnel actions, prohibited or otherwise.

This conclusion does not unleash the parade of horribles that Plaintiff imagines, *i.e.*, that "applicants could have all their private information, financial information, medical history, polygraph results and security file illegally accessed and used . . . for personal and malicious ends without remedy." (Reply at 15, ECF No. 43.) Any of that hypothetical conduct would injure an applicant *independently* of his or her federal employment application, and he or she could readily bring claims to redress those harms. By contrast, *all* of Plaintiff's claims here are predicated upon the NSA's withdrawal of his employment offer, a personnel action. This can be shown by considering the counterfactual—which of the ten claims could Plaintiff plausibly bring if, despite his fractious relationship with Defendants, he had gotten the job at the NSA? The clear answer, none, dooms his complaint regardless of how many allegations he makes regarding the conduct that precipitated the withdrawal.

### vi. Withdrawal of Plaintiff's Ex-Wife's Offer

19

Plaintiff attempts to rebut this conclusion by arguing that the "Fifth Retaliatory Act," the withdrawal of his ex-wife's offer, is not a personnel action because it occurred after Plaintiff was no longer an applicant to the NSA. Setting aside Plaintiff's ability to assert claims on behalf of his ex-wife, this argument is foreclosed by the plain text of the CSRA, which prohibits the taking of "a personnel action with respect to *any* employee or applicant for employment because of . . . any disclosure of information by an employee or applicant." 5 U.S.C. § 2302(b)(8)(A). The phrasing of this section makes it clear that the question of whether conduct constitutes a personnel action is determined by the person against whom the action is taken, not by the person who disclosed the information. In this case, when the NSA withdrew Plaintiff's ex-wife's offer, it constituted a personnel action because she was "any . . . applicant for employment" when the offer was withdrawn, and he was "an . . . applicant" when he made disclosures to NSACC and the NSA OIG. *Id.* As such, the Court finds it did not "conflate[] the Fifth Retaliatory Act with the Fourth Retaliatory Act," but rather that it correctly determined each was a personnel action. (*See* Reply at 4.)

### vii.  *Privacy Act Claims*

In a similar vein, Plaintiff argues that his "Privacy Act claim does [not] seek to reverse any personnel action, nor does it encompass activity that could be defined as a personnel action requiring dismissal under the CSRA." (Mot. Amend Mem. Supp. at 20.) The first hurdle to this argument is that, as previously explained, Plaintiff cannot bring Privacy Act claims against these Defendants because "the Act only authorizes suit against federal agencies." *See Chesser v. Chesser*, 600 F. App'x 900, 902 n.3 (4th Cir. 2015) (citing 5 U.S.C. §§ 552(a)(4)(B), 552(a)(g)(1)). Plaintiff attempts to avoid this issue by arguing that the Privacy Act provides an implied cause of action against federal employees, something that *Chesser* did not explicitly consider. Even

assuming *arguendo* that *Chesser* does not, by strong implication, foreclose Plaintiff's claims, there is no merit to Plaintiff's contention that the Privacy Act contains an implied private right of action. *See In re Miller*, 124 F. App'x 152, 155 (4th Cir. 2005) ("[T]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.") (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)).

Congressional intent to imply a private right of action must be clear, "[i]f Congress is silent or ambiguous, courts may not find a cause of action no matter how desirable that might be as a policy matter." *Planned Parenthood S. Atl. v. Baker*, 941 F.3d 687, 695 (4th Cir. 2019) (internal quotation marks and citations omitted). Importantly, as courts "swore off the habit of venturing beyond Congress's intent" in implying private rights of action, the inquiry has become narrower and more stringent for plaintiffs. *Id.* Critically, plaintiffs must identify "rights-creating language," *i.e.* "language that explicitly confers a right directly on a class of persons that includes the plaintiff." *In re Miller*, 124 F. App'x at 154 (internal quotation marks and citations omitted). Plaintiff has not identified any language in the Privacy Act that would grant him rights vis-a-vis individual NSA employees.

Independently, even if Plaintiff could bring an action under the Privacy Act, he could still not do so "to frustrate the exclusive, comprehensive scheme provided by the CSRA." *Vesella v. Dep't of Air Force*, 995 F.2d 1061 (1st Cir. 1993) (per curium); *see also Orsay*, 289 F.3d at 1130 ("Because Appellants' Privacy Act claims are in fact complains about 'prohibited personnel practices' under the CSRA, we hold that the CSRA precludes consideration of the claims."). As noted in the Dismissal, the only evidence to support Plaintiff's Privacy Act claim is "the withdrawal of his conditional offer, and the damages he seeks are for his loss of employment."

(ECF No. 35 at 15–16 (citing Compl. ¶¶ 130–44).)  In sum, Plaintiff's Privacy Act claims fail for various independent reasons and the Court finds no error in its dismissal of these claims.

### viii.   Bivens

Finally, Plaintiff alleges that the Court erred in failing to consider whether he had an implied constitutional remedy under *Bivens*, despite this Court concluding that any such remedy was foreclosed by the CSRA. *See generally Bivens*, 403 U.S. 388.  Plaintiff's argument appears to be premised on acceptance of his earlier arguments that his claims are not precluded by the CSRA. (Reply at 16.); *see also Earle v. Shreves*, ___ F.3d ___, 2021 WL 896399, at *2 (4th Cir. Mar. 10, 2021) ("The implied-remedy question [under *Bivens*] does not go to the jurisdiction of the court."). The CSRA applies to Plaintiff's claims, and therefore, the Court lacks jurisdiction to consider Plaintiff's *Bivens* claim on the merits. *See Zimbelman v. Savage*, 228 F.3d 367, 370 (4th Cir. 2000) (finding CSRA precluded *Bivens* claims even though plaintiffs could not avail themselves of the CSRA's statutory review provisions).

The Court acknowledges that this conclusion may implicate the "serious constitutional question" that arises with "a statute that purports to deny any judicial forum for a colorable constitutional claim." *Elgin*, 567 U.S. at 9 (internal quotation marks and citations omitted).  This potential issue with the CSRA is not, however, presented in this case, as a brief consideration of Plaintiff's *Bivens* claim shows that it is not colorable.

This is because "while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 391–92 (2011) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 420

(2006)). Instead, to make out a First Amendment retaliation claim, a "public employee . . . must show that he or she spoke as a citizen on a matter of public concern" when they filed the grievance that triggered the retaliation. *Id.* at 386. The Fourth Circuit has confirmed that *Duryea* made "quite clear . . . that 'complaints about the employee's own duties that are filed with an employer using an internal grievance procedure do not relate to a matter of public concern.'" *Brooks v. Arthur*, 685 F.3d 367, 369 (4th Cir. 2012) (quoting *Duryea*, 564 U.S. at 386)). In short, Plaintiff has shown nothing about "the content, form, and context of the petition" which indicates that his complaints to NSACC and the NSA OIG were made as a citizen on a matter of public concern. *Duryea*, 564 U.S. at 398 ("A petition filed with an employer using an internal grievance procedure in many cases will not seek to communicate to the public."). Therefore, Plaintiff does not raise a colorable constitutional violation even absent consideration of whether *Bivens* provides an implied remedy. *Earle*, 2021 WL 896399, at *2 ("[I]t is sometimes appropriate for a court to assume the existence of a *Bivens* remedy and dispose of a claim by resolving the constitutional question.").[6]

Further, although the Fourth Circuit has not undertaken the reticulated analysis outlined by the Supreme Court in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), they have foreclosed *Bivens* relief even where a plaintiff is otherwise "exempted by Congress from the [CSRA]." *Zimbelman*, 228 F.3d at 370. For both reasons, Plaintiff has failed to raise a colorable constitutional claim. Therefore, while this Court may reiterate its doubts about Congress' decision to exempt some personnel decisions under the CSRA from any form of judicial review, "it would be inappropriate to supplement that regulatory scheme with a new judicial remedy." *Id.*

---

[6] Plaintiff's Complaint also raises *Bivens* claims under the Privileges and Immunities Clause. (Compl. ¶ 128.) He provides no cases or analysis as to why this clause is implicated here, nor does the Court see any reason that it would be. *See Paul v. Virginia*, 75 U.S. 168, 180 (1868) ("It was undoubtedly the object of the [Privileges and Immunities Clause] to place the citizens of each State upon the same footing with citizens of other States.").

In sum, having exhaustively reviewed Plaintiff's objections to the Dismissal, the Court finds that none support altering or amending the Court's initial judgment dismissing this case for lack of jurisdiction. The Court acknowledges that this is a significant conclusion, as it leaves Plaintiff with no neutral forum for his grievances and leaves future allegations of malfeasance made by intelligence agency applicants subject to the sole review of those agencies' internal procedures. The Court hopes that this conclusion is ameliorated somewhat by the effort taken to ensure that Plaintiff's jurisdictional arguments were fully and thoughtfully considered. That said, the Dismissal was clearly dictated by the text, structure and purpose of the CSRA. The reconsideration that Plaintiff seeks lies with Congress.

### IV.    Conclusion

For the foregoing reasons, Plaintiff's motion to alter or amend this Court's prior judgment dismissing his complaint is DENIED.

DATED this 12 day of April, 2021.

BY THE COURT:

James K. Bredar
Chief Judge